UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>VICTOR GARCIA,<br><br>Defendant. | No. 1:18-cr-00126-DAD-BAM-1<br><br>ORDER DENYING DEFENDANT VICTOR GARCIA'S MOTION FOR MODIFICATION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)<br><br>(Doc. No. 165) |

Pending before the court is a *pro se* motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) brought by defendant Victor Garcia. (Doc. No. 165.) That motion is based in part on the purported risks allegedly posed to defendant by the ongoing coronavirus ("COVID-19") pandemic. For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On June 14, 2018, an indictment was returned charging defendant Garcia and his five co-defendants with various drug and firearms offenses in a nine-count indictment, including Count One for conspiracy to distribute and to possess with intent to distribute at least 50 grams or more of actual methamphetamine and 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1). (Doc. No. 30.) On October 29, 2018, defendant Garcia entered a plea of guilty to Count One (one of the only two counts in which he was charged), pursuant to a written plea agreement. (Doc. Nos. 65,

67.) On April 29, 2019, the court sentenced defendant Garcia to 87 months imprisonment in the custody of the U.S. Bureau of Prisons ("BOP"), to be followed by a 60-month term of supervised release, which is to become unsupervised if he is deported. (Doc. Nos. 91, 94.) The court also imposed the mandatory $100 special assessment. (*Id*.)

Defendant Garcia is currently serving his sentence at Federal Correctional Institution, Victorville Medium II ("FCI Victorville Medium II") in Victorville, California. (Doc. No. 188 at 1, n.1.) Before his transfer to FCI Victorville Medium II in April 2021, defendant Garcia was incarcerated at Correctional Institution Reeves I/II ("CI Reeves I/II") in Pecos, Texas. (*Id.*) As of the date of this order, defendant Garcia has served approximately 40 months, or 46% of his full 87-month custodial sentence. (Doc. Nos. 188 at 1, n.1; 188-1 at 4.) Accounting for good time credit, his projected release date is August 3, 2024. (Doc. Nos. 188 at 5; 188-1 at 2.)

On March 18, 2021, defendant filed a *pro se* motion seeking a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 165.) The court then referred defendant's motion to the Federal Defender's Office and appointed counsel to represent defendant in his motion seeking compassionate release. (Doc. Nos. 166, 168.) On July 21, 2021, appointed counsel notified the court that no supplemental motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) would be forthcoming. (Doc. No. 185.) The government filed its opposition to the pending motion on September 22, 2021. (Doc. No. 155.) On September 29, 2021, defendant Garcia, through appointed counsel, notified the court that a reply to the government's opposition would not be filed and that the matter was submitted for decision. (Doc. No. 191.)

Notably, while his motion for compassionate release was pending before the court, defendant Garcia received both doses of the Pfizer-BioNTech COVID-19 vaccine and is now fully vaccinated; he received the first dose on April 22, 2021 and the second dose of the vaccine on May 10, 2021. (Doc. Nos. 193 at 31—sealed; 188 at 9.)

**LEGAL STANDARD**

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may

2

not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i)   extraordinary and compelling reasons warrant such a reduction; or
>
> (ii)  the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L.

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13 (U.S. Sent'g Comm'n 2018)[3]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that many courts have relied on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, the Ninth Circuit has now held "that the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). "In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *Id.*

---

116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3] According to U.S.S.G. § 1B1.13(2), to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). However, as the Ninth Circuit has now clarified, "[t]his dangerousness finding is not statutorily required under 18 U.S.C. § 3582(c)(1)(A)(i), but [it] is part of the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13(2)." *United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021).

The Ninth Circuit has concluded that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

In so holding, the Ninth Circuit joined the five other circuits who have addressed this issue and have unanimously held "that U.S.S.G. § 1B1.13 only applies to § 3582(c)(1)(A) motions filed by the BOP Director, and does not apply to § 3582(c)(1)(A) motions filed by a defendant." *Id.*; *see, e.g.*, *United States v. Brooker (Zullo)*, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."); *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); *Gunn*, 980 F.3d at 1181 ("[T]he Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release. District judges must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review."); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) ( "In short, we agree with the Second Circuit and the emerging consensus in the district courts: There is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'") (citation omitted); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021) ("We therefore agree with the district court that under the second part of § 3582(c)(1)(A)'s test, its finding that extraordinary and compelling reasons warranted a reduction in Maumau's case was not constrained by the Sentencing Commission's existing policy statement, U.S.S.G. § 1B1.13.").

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district courts to have done so agree that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id*.

*United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019); *see also United States v. Ramirez-Suarez*, No. 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *United States v. Parker*, 461 F. Supp. 3d 966, 970 (C.D. Cal. 2020); *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in § 3553(a)).

### A.  Administrative Exhaustion

In this case, the government concedes that defendant has exhausted his administrative remedies prior to filing his pending § 3582 motion. (Doc. No. 188 at 5.) Specifically, defendant Garcia submitted a written request for compassionate release to the warden of CI Reeves I/II on

/////

6

January 4, 2021, and the warden denied that request on January 7, 2021.[4]  (Doc. Nos. 165 at 10–12; 188 at 5.)  Accordingly, the court will turn to the merits of defendant's motion.

**B.     Extraordinary and Compelling Reasons**

According to the Sentencing Commission's policy statement, "extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons."  U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D).  As addressed above, even though the catch-all of "other reasons" was included in the policy statement at a time when only the BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions for reductions in their sentence under the FSA.  *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases.)  Moreover, in light of the Ninth Circuit's decision in *Aruda*, while U.S.S.G. § 1B1.13 may inform its determination, this court is not restricted thereby and instead has "full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."  *Jones*, 980 F.3d at 1111.

The medical condition of a defendant may warrant the granting of compassionate release by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required."  U.S.S.G. § 1B1.13, cmt. n.1(A)(i).  Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia."  *Id*.  In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

/////

---

[4] Neither party has addressed whether the defendant was required to appeal the warden's denial in order to exhaust his administrative remedies.  Because a failure to exhaust administrative remedies is normally viewed as an affirmative defense which must be pled and proven, the court will accept the government's concession regarding administrative exhaustion and will address the merits of defendant's pending motion.

>The defendant is
>
>>(I) suffering from a serious physical or medical condition,
>>
>>(II) suffering from a serious functional or cognitive impairment, or
>>
>>(III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id*. at cmt. n.1(A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 may tip the scale in favor of release when the particular circumstances of a case are considered in their totality. *See, e.g.*, *Parker*, 461 F. Supp. 3d at 980 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[5]

In his pending motion, defendant argues that extraordinary and compelling reasons warranting a reduction of his custodial sentence exist because he cannot practice social distancing at CI Reeves I/II because it is too crowded, and he has (unspecified) health conditions that make

---

[5] Here, however, because defendant Garcia is only 36 years old (Doc. Nos. 73 at 3, 188 at 5), his age and age-related factors do not play a role in consideration of his pending motion.

8

him more vulnerable to serious illness if he were to contract COVID-19. (Doc. No. 165 at 2.) In addition, defendant contends that CI Reeves I/II staff demonstrated their complacency with the spread of COVID-19 in that facility when they failed to administer a COVID-19 test to him when he showed (unspecified) COVID-19 related symptoms. (*Id.* at 5.)

In its opposition to the pending motion, the government argues that defendant Garcia has failed to carry his burden of establishing his eligibility for compassionate release because the mere existence of COVID-19 in society or in the correctional institution where he is imprisoned is not an extraordinary and compelling reason justifying the granting of the requested relief. (Doc. No. 188 at 8.) Moreover, the government counters defendant's generalized concerns about COVID-19, his health conditions, and conditions at CI Reeves I/II, by emphasizing that "BOP medical records indicate that [defendant] Garcia is a healthy 36-year-old who is not being treated for any health conditions" and that defendant "has never contracted COVID-19 and is now fully vaccinated against COVID-19." (*Id.* at 9.)

The court concludes that defendant has failed to show the existence of extraordinary and compelling reasons calling for his release from confinement in light of the critical fact that he is now fully vaccinated, combined with the fact that his conclusory and generalized arguments regarding his alleged inability to provide self-care during this pandemic relate to his prior conditions of his confinement at CI Reeves I/II, not to his current conditions of confinement at FCI Victorville Medium II. As to defendant's vaccination status, he received his second dose of the Pfizer-BioNTech vaccine on May 10, 2021. (Doc. Nos. 193 at 31—sealed.) Because more than two weeks have passed since receiving his second dose, defendant is now fully vaccinated against the virus. *See COVID-19: When You've Been Fully Vaccinated*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html (last updated Sept. 16, 2021).

In light of all of the above, the court concludes that defendant Garcia has not met his burden of demonstrating extraordinary and compelling reasons for his compassionate release under § 3582(c)(1)(A), in large part because, as this and many other courts have recognized, any risk posed to him by COVID-19 has been mitigated by his receiving the COVID-19 vaccination.

*See United States v. Barajas-Guerrero*, No. 1:17-cr-00148-NONE, 2021 WL 1839728, at *6 (E.D. Cal. May 7, 2021); *see also United States v. Ochoa-Alapisco*, No. 14-378(2) ADM/LIB, 2021 WL 2322680, at *3 (D. Minn. June 7, 2021) (denying compassionate release because "any risk...has been substantially reduced because [defendant] is likely now fully vaccinated" which "provides him with significant protection against severe illness or death from COVID-19 should he become reinfected."); *United States v. Willis*, 3:15-cr-00465-BR, 2021 WL 2179256, *3-4 (D. Ore. May 27, 2021) (citing cases); *United States v. Smith*, No. 2:98-cr-00009-KJM-CKD, 2021 WL 1890770, at *3 (E.D. Cal. May 11, 2021) ("Although no federal court of appeal appears to have considered the question, district courts across the country, including within this Circuit, have held almost uniformly that a defendant's vaccination undercuts any claims of 'extraordinary and compelling reasons' based on a high risk of infection."); *United States v. Kariblghossian*, No. 2:13-cr-00318-CAS-1, 2021 WL 1200181, at *3 (C.D. Cal. Mar. 29, 2021) (finding no extraordinary and compelling reasons for compassionate release where a defendant has been fully vaccinated); *United States v. Grummer*, 519 F.Supp.3d 760, 763 (S.D. Cal. 2021) ("Although Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19. Other courts to address the issue have reached similar conclusions."); *United States v. Ballenger*, No. CR 16-5535 BHS, 2021 WL 308814, at *5 (W.D. Wash. Jan. 29, 2021) ("[B]ecause [defendant] has already been infected and vaccinated, his chronic medical conditions alone do not amount to an extraordinary and compelling reason to warrant compassionate release.").Therefore, his motion for compassionate release will be denied.

**C.     Consistency With the § 3553(a) Factors**

Finally, even if defendant Garcia's motion was supported by a showing of extraordinary and compelling reasons for his compassionate release, the undersigned is not persuaded that the requested reduction in his sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).[6] *See Parker*, 461 F. Supp. 3d at 979.

---

[6] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider:  the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect

Defendant asserts that he does not pose a danger to the community because he was convicted of a non-violent offense and "has almost [] none criminal history." (Doc. No. 165 at 6.) Defendant also argues that due to COVID-19 conditions, the time he has served in custody thus far has been under "more severe" and punitive conditions, reflecting his service of a sentence sufficient to satisfy the purposes of sentencing. (*Id.* at 7.)

The government counters that because defendant has served only 40 months of his 87-month sentence, a reduction in his sentence would be inconsistent with the § 3553(a) sentencing factors. (Doc. No. 188 at 11.) First, the government notes that because defendant's original advisory sentencing guideline range called for a term of imprisonment between 120 and 135 months, defendant already received a lenient sentence of 87 months imprisonment. (*Id.*) Second, the government argues that "[t]he nature and circumstances of the offense, and the history and characteristics of the defendant substantially weigh against compassionate release in this case" because defendant Garcia "ran and operated his own drug trafficking organization in the Fresno area," he "admitted he sold methamphetamine at the time of his arrest at his residence and showed law enforcement where the methamphetamine was stored in his garage," and he was held responsible for a converted drug weight of 23,567.66 kilograms of methamphetamine at the time of sentencing. (*Id.*) Third, at the time of his arrest, defendant Garcia had "two outstanding felony warrants for drug trafficking activities in Fresno County Superior Court," and he had "been removed from the United States on multiple occasions due to having no legal residence status." (*Id.*)

As noted above, defendant Garcia is currently serving an 87-month sentence of imprisonment for conspiracy to distribute and to possess with intent to distribute

---

the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

methamphetamine. (Doc. Nos. 91, 94.) At the time of his sentencing on April 29, 2019, defendant was found to be responsible for a very large amount of methamphetamine. (Doc. No. 73 at 9.) Specifically, defendant Garcia operated a drug trafficking organization in the Fresno area, directing his co-defendants in the sale and delivery of large amounts of methamphetamine on a regular basis to his several customers. (Doc. No. 73 at 5–8, 18.) With his early acceptance of responsibility, the U.S. Probation Office determined that defendant's total offense level was 31 and his criminal history was I, resulting in an advisory sentencing guideline range calling for a term of imprisonment of between 120 and 135 months. (*Id.* at 4.) "[T]o hold defendant accountable for his criminal conduct and deter him and others from committing further similar criminal activity," the probation officer recommended a middle of the guideline range sentence of 127 months imprisonment. (*Id.* at 18.) The undersigned relied upon its careful consideration of the § 3553(a) factors and defendant's eligibility for safety valve relief in varying downward significantly from the advisory sentencing guideline range and imposing an 87-month term of imprisonment. (Doc. No. 94 at 2.)

As of the date of this order, defendant Garcia has served less than half of the 87-month sentence imposed; even if good time credits are applied, he has served approximately half of his sentence. (Doc. Nos. 188 at 5; 188-1 at 2.) "The length of the sentence remaining is an additional factor to consider in any compassionate release analysis,' with a longer remaining sentence weighing against granting any such motion." *United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993 at *6 (N.D. Cal. May 26, 2020) (quoting *United States v. Connell*, No. 18-cr-00281-RS, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020)); *see also United States v. Lonich*, No. 1:14-cr-00139-SI-1, 2020 WL 2614874, at *3 (N.D. Cal. May 21, 2020) (denying motions for compassionate release, noting, "the Court finds it significant that defendants have served far less than half of their sentences"). In the court's view, considering that defendant already received a well below-guideline range sentence, a reduction of defendant's 87-month sentence effectively to one of just over three years would not adequately reflect the seriousness of his offense of conviction, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct. *See United States v. Purry*, No. 2:14-cr-00332-

JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *Shayota*, 2020 WL 2733993 at *5; 18 U.S.C. § 3553(a).

Moreover, reducing defendant Garcia's custodial sentence to one of approximately 40 months may result in unwarranted sentence disparities among his co-defendants. Neither defendant Garcia nor the government address this factor, but the court notes that co-defendant Patrick Shaun Burriel—who sold methamphetamine at defendant Garcia's direction—had a total offense level of 29 and criminal history category of V, resulting in an advisory sentencing guideline range calling for a term of imprisonment of between 140 and 175 months, and was sentenced to a 78-month term of imprisonment. (Doc. Nos. 79 at 17; 93 at 2.) Co-defendant Michelle Madewell—who also sold methamphetamine at defendant Garcia's direction—is scheduled to be sentenced by the court in December 2021, but the U.S. Probation Office's final presentence report has concluded that her total offense level was 25 and her criminal history category was VI, resulting in a guideline range calling for a term of imprisonment of between 110 to 137 months, though the probation officer in her case has recommended an 87-month term of imprisonment. (Doc. No. 100 at 20, 25.) Although the court has not yet sentenced co-defendant Madewell, there remains a significant possibility that she will ultimately be sentenced to a term of imprisonment longer than the 40 months that defendant Garcia has served to date.

Thus, on balance, the court finds that granting defendant's motion and reducing his sentence to time served would not be consistent with the § 3553(a) sentencing factors.

## CONCLUSION

Because defendant Garcia has failed to demonstrate that "extraordinary and compelling" reasons exist justifying a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A) or that such a reduction at this time would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a), his motion for compassionate release (Doc. No. 165) is denied.

IT IS SO ORDERED.

Dated: **October 30, 2021**

UNITED STATES DISTRICT JUDGE

13